# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA
# PITTSBURGH

| | |
|---|---|
| HOWARD COOPER, | |
| Plaintiff, | 2:15-CV-00267-LPL |
| vs. | ECF NO. 68 |
| SGT. MARTUCCHI, OFFICER WALTER, OFFICER BURNHART, DR. JIN, | |
| Defendants. | |

## MEMORANDUM OPINION

This case is before the Court on Defendants Martucci, Walters, and Barnhart's Motion for Summary Judgment filed on November 23, 2015. (ECF No. 68.) Defendants have filed a Motion for Summary Judgment, Concise Statement of Material Facts, and a Brief in Support thereof. (ECF Nos. 68, 70, 69.) Plaintiff has filed a Brief in Opposition to the Motion for Summary Judgment (ECF No. 78).

### I.   FACTUAL BACKGROUND

On or around February 23, 2015, *pro se* Plaintiff, Howard Cooper, initiated a civil action against various defendants regarding an assault by another inmate and the medical care provided to him while he was an inmate incarcerated within the Pennsylvania Department of Corrections at S.C.I.-Greene. According to his Complaint, on December 1, 2014, Plaintiff overheard Inmate Mayo advise the Defendant Corrections Officers that he was a Z-Code (single cell housing restriction) and that he would kill anyone who was placed in a cell with him. (ECF No. 7, ¶ 7). Plaintiff alleges that, as the cell door opened, Inmate Mayo reaffirmed that, if the Defendants put him in a cell with another inmate, he would try to kill the cellmate. (ECF No. 7, ¶ 8).

1

Notwithstanding these threats, the Corrections Officers purportedly ordered Inmate Mayo into a cell with Plaintiff. (ECF No. 7, ¶ 8). Once in the cell, Inmate Mayo pulled a sock filled with batteries from his personal belongings and began to assault Plaintiff, hitting him with the battery-filled sock approximately 12 to 15 times on his head, hands, ribs, stomach, and legs. (ECF No. 7, ¶ 9-10). Plaintiff alleges that Defendants were deliberately indifferent to his safety by housing him in a cell with a Z-code inmate after the inmate threatened to "kill" any potential cellmates. (ECF No. 7, ¶ 15).

Undisputed evidence shows that Sgt. Martucci checked three different sources to determine if Inmate Mayo was a Z-code before placing him in the cell with Plaintiff. (Exh. B, ¶ 4; ECF No. 78, ¶ 41). A later investigation revealed that Inmate Mayo was a Z-code, but the code was omitted by a clerical error made by a counselor and that Defendants had no way of knowing this information. (Exh. C, p. 49).

Defendants dispute that Inmate Mayo told them that he would kill a cellmate if forced to house with one. (ECF No. 69, pg. 5). Defendants admit that Inmate Mayo argued with them over the Z-code status, but deny that Inmate Mayo made any threats to harm or kill a cellmate. (ECF No. 69, pg. 5).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at

trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence, or the lack thereof, which demonstrates the absence of a genuine issue of material fact. *Nat'l State Bank v. Fed. Reserve Bank of N.Y.*, 979 F.2d 1579, 1581-82 (3d Cir. 1992) (citing *Celotex,* 477 U.S. at 323-25). Once that burden has been met, the non-moving party may not rest on the allegations in the complaint, but must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324 (quoting FED. R. CIV. P. 56(e) (1963)). *See also Orsatti v. N.J. State Police,* 71 F.3d 480, 484 (3d Cir. 1995) ("plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case.") (citing *Celotex,* 477 U.S. 317).

An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* FED. R. CIV. P. 56(c)(2); *Celotex*, 477 U.S. at 324; *J.F. Feeser, Inc., v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990).

Where the non-moving party fails to respond to a summary judgment motion, that failure does not automatically result in the entry of summary judgment for the movant. *Douglas v. Brookville Area Sch. Dist.,* 836 F.Supp. 2d 329, 351 (W.D. Pa. 2011) (citing *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 171 (3d Cir. 1990)). Instead, where the non-moving party fails to properly address the moving party's assertions of fact as required by Rule 56(c), the court may give the non-moving party yet another opportunity to properly address the

3

asserted facts or may consider the asserted facts undisputed, or the court may "grant summary judgment only if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to [judgment as a matter of law]." FED. R. CIV. P. 56(e)(1) - (3). *See Accord Cortez v. Ford,* No. 1:07-CV-1466, 2008 WL 4186906, at *1 (M.D. Pa. Sept. 5, 2008) (court deemed summary judgment motion unopposed where plaintiff failed to file an appropriate response despite being afforded the opportunity to respond and being advised that his failure to do so in a timely manner would result in the motion being deemed unopposed); *Robinson v. Velasquez,* No. 07-CV-3645 (KAM)(LB), 2010 WL 1010733, at *4 (E.D.N.Y. Mar. 15, 2010) (granting defendant's motion for summary judgment in §1983 action where *pro se* plaintiff failed to oppose it, despite receiving notice of the motion and supporting documents, including a notice identifying his obligations and repeated opportunity, through extensions of time, to respond, and court determined defendant was entitled to judgment as a matter of law).

### III. ANALYSIS

#### A. Deliberate Indifference to Plaintiff's Safety by Housing Him with a Z-Code Inmate

It is undisputed that Inmate Mayo had Z-code status and was not supposed to be housed with a cellmate; the issue is whether or not the Corrections Officers can be held liable for housing Inmate Mayo with Plaintiff despite this fact. The parties agree that Inmate Mayo told the Defendants, as they were leading him to Plaintiff's cell, that he was Z-code status and was not supposed to be housed with anyone else. ([ECF No. 7](#)1-1, Exh. B, ¶ 4; Exh. C, p. 38; [ECF No. 78](#), ¶ 41). After hearing this, Sgt. Martucci double-checked the information that he had received that afternoon from the Unit Manager, but there was no Z-code status listed. ([ECF No. 7](#)1-1, Exh. B, ¶ 4). Then he checked with the "Bubble Officer" and his records were the same. *Id.* Finally, Sgt.

Martucci called to the Restricted Housing Unit Lieutenant, who also confirmed that Inmate Mayo did not have a Z-code status. *Id.*

Defendants assert that "no amount of investigation could have confirmed Mayo's claim because the record was incorrect." (ECF No. 69 p. 10). A later investigation revealed that Counselor Congelio, who was assigned to Inmate Mayo, had made a mistake in his record that caused Inmate Mayo's Z-code to drop from the system. (ECF No. 71-1, Exh. C, pp. 20, 48-49).

Plaintiff, in his Response, states that the error in Inmate Mayo's record was not a material fact because Plaintiff's claims are based on Defendants' failure to respond to "the serious risk of harm posed to Plaintiff, not because of the incorrect record." (ECF No. 78, ¶ 41).

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. Prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

A prison official is only liable under a deliberate indifference claim if an inmate can prove two elements: (1) prison officials knew of "an excessive risk to inmate health or safety" and (2) that the officials "disregarded" this risk. *Farmer*, 511 U.S. at 837; *Beers-Capitol v. Whetzel,* 256 F.3d 120, 125 (3d Cir. 2001). The official must actually be aware of the risk; an allegation that the official should have been aware of the risk is insufficient. *Farmer,* 511 U.S. at 837.

Furthermore, if an official is actually aware of the risk, and the harm is not avoided, he is not liable if he can show that he responded reasonably to the risk. *Farmer*, 511 U.S. at 844.

5

Prison officials cannot be found liable on a failure-to-protect claim if they act reasonably. *Id.* at 845.

Here, Defendants were informed of a potential risk to Plaintiff's safety when Inmate Mayo told them he was supposed to have Z-code status. However, they did not "disregard" this risk and they reasonably responded to it. Sgt. Martucci triple-checked Inmate Mayo's alleged Z-code status three times before moving him into Plaintiff's cell. All three sources failed to show that Inmate Mayo had a Z-code status because of a clerical error made by a counselor, not any of the Defendants. Under the circumstances, Defendants did not disregard a potential risk, took reasonable steps to investigate it, and, after this investigation, were not even aware that a risk existed.

Therefore, Plaintiff has failed to state a claim for deliberate indifference to his safety for the Defendants housing Z-code status Inmate Mayo with Plaintiff.

### B. **Deliberate Indifference to Plaintiff's Safety by Ignoring Threats from Fellow Inmate**

The Parties disagree as to whether there is a disputed, material fact regarding whether or not Inmate Mayo made threats on Plaintiff's life in front of, and within hearing distance of, the Defendants. Plaintiff asserts that he heard Inmate Mayo and the Defendants arguing outside of his cell; specifically, Inmate Mayo purportedly said that if he was put into a cell with someone he would try to kill him. ([ECF No. 7](), ¶ 7). Plaintiff alleges that Inmate Mayo repeated this threat as Plaintiff's cell door was opened. ([ECF No. 7](), ¶ 8). Plaintiff claims that, since Defendants disregarded these threats and ordered Inmate Mayo into his cell regardless, Defendants were deliberately indifferent towards Plaintiff's safety. ([ECF No. 7](), ¶ 15).

Defendants admit that Inmate Mayo argued with them over the Z-code status, but deny that Inmate Mayo told them that he would kill a cellmate if he was forced to be housed with one.

6

Defendant Sgt. Martucci asserted in an affidavit that Inmate Mayo "never threatened anyone or said anything about harming a cellie if put in with someone." (ECF No. 71-1, Exh. B, ¶ 5-9). Similarly, in his written statement following an interview concerning the incident, Officer Walters claimed that at no time prior to Inmate Mayo going into Plaintiff's cell did Inmate Mayo state that "he was going to harm, assault, or try to kill his cell mate or Inmate Cooper." (ECF No. 71-1, Exh. C., pp. 40-41). Officer Hollowood, who was later determined to be one of the officers leading Inmate Mayo to Plaintiff's cell, also made a similar statement that at no time prior to Inmate Mayo being moved to the cell did Inmate Mayo "state he was going to harm or assault or try to kill his cellmate or Inmate Cooper." *Id.* at 42-43.

Defendants further allege that Inmate Mayo, in an interview after the incident, stated he did not make any threats that he would harm or kill any cellmate while being led to his cell, and merely informed the Defendants of his Z-code status. *Id*. at 38. Finally, Defendants refer to a later interview with Plaintiff after the incident where Plaintiff allegedly contradicted his prior statements by admitting that he had not actually heard Inmate Mayo inform Defendants prior to the assault that he was going to try to "harm or kill a cellmate." *Id.* at 35.[1]

Plaintiff responded by disputing the allegations made by the Defendants that Inmate Mayo never threatened to kill Plaintiff as the Defendants were leading Inmate Mayo to Plaintiff's cell. (ECF No. 78, ¶ 39). In support of his assertion, Plaintiff refers to the original grievance he filed with the prison which stated Inmate Mayo "told [the Defendants] that if they put him with me in 2 cell he was going to try and kill his celly." (ECF No. 71-1, Exh. C, p. 32). After his grievance was denied, Plaintiff filed an appeal which reiterated that the Defendants were to

---

[1] The report from the interview states that Plaintiff said he knew staff were aware of the threats prior to the assault because of what he heard Inmate Mayo saying while he was attacking him. Also, he said "he just knows" and other people had told him. (ECF No. 71-1, Exh. C, p. 35).

7

blame for Inmate Mayo's assault on Plaintiff because "they heard the threat and they disregarded it." *Id.*at 29-30.

Finally, Plaintiff also relies on the report he made to the Inmate Abuse Hotline, in which he told the investigator that Inmate Mayo had informed the Defendants that he would assault Plaintiff if Inmate Mayo was placed in the cell with him. *Id.* at 14. Plaintiff relies on these records and reports to support his allegation that Inmate Mayo did make threats to harm, or kill, Plaintiff and that Defendants heard these threats but disregarded them, demonstrating deliberate indifference.

As stated above, a prison official is only liable under a deliberate indifference claim if an inmate can prove two elements: (1) prison officials knew of "an excessive risk to inmate health or safety," and (2) that the officials "disregarded" this risk. *Farmer*, 511 U.S. at 837 (1994); *Beers-Capitol,* 256 F.3d at 125 (3d Cir. 2001). Furthermore, not every injury suffered by an inmate at the hands of another automatically means that the prison officials are liable. *Farmer,* 511 U.S. at 834. Therefore, to defeat a Motion for Summary Judgment, the Plaintiff must present enough evidence "to support an inference that the defendants 'knowingly and unreasonably disregarded an objectively intolerable risk of harm.'" *Beers-Capitol*, 256 F.3d at 132.

Plaintiff avers that Inmate Mayo threatened to harm him. If the Defendants had heard Inmate Mayo threaten that he was going to harm his potential cellmate (Plaintiff), they would have been aware of "an excessive risk to inmate health or safety." If they proceeded to place Inmate Mayo in Plaintiff's cell after hearing the threats, they would have "disregarded" this risk. However, the Defendants have alleged, and supported these allegations with an affidavit and written statements, that Inmate Mayo never made any threats. This presents a material issue of fact for the jury to determine. Therefore, Defendants' Motion for Summary Judgment on this

deliberate indifference issue, concerning the disregard of threats on Plaintiff's life by a fellow inmate, will be denied.

### C. Officer Barnhart's Personal Involvement in the Alleged Claims

Defendants assert that Plaintiff confused Defendant Barnhart, one of the officers who responded to the fight call, with Officer Hollowood, who was present in transporting Inmate Mayo to Plaintiff's cell and watched him unpack his belongings. (ECF. 70, ¶ 46).

In his affidavit, Defendant Martucci asserts that when Inmate Mayo arrived from RHU he was escorted by Officer Hollowood and Officer Walters. (ECF No. 71-1, Exh. B, ¶ 4). This is supported by Defendant Barnhart's own incident report where he states he arrived after the assault took place in order to assist with an escort to medical. (ECF No. 71-1, Exh. D, pp. 30-31). Furthermore, the Defendants have provided video evidence that shows CO Hollowood with Inmate Mayo as he is unpacking his belongings, but Officer Barnhart does not appear until after the assault has actually taken place. (ECF No. 71-1, Exh. A; Exh. B-1). In his response, Plaintiff does not dispute this assertion[2] (ECF 78, ¶ 46).

If Officer Barnhart was not present when Inmate Mayo was being led to Plaintiff's cell or during the assault, he could not have known of an "excessive risk" to Plaintiff's safety and then chosen to "disregard" it. Therefore, Defendants' Motion for Summary Judgment on the issue of Officer Barnhart's personal involvement will be granted.

### IV. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 68) will be granted in part and denied in part.

---

[2] However, Plaintiff does qualify this by saying he wants to review the video footage. (ECF 78, ¶ 46).

An appropriate Order will follow.

DATED this 26th day of February, 2016.		BY THE COURT:

		_____
		LISA PUPO LENIHAN
		United States Magistrate Judge

CC: **HOWARD COOPER**
JT-3733
SCI Greene
175 Progress Drive
Waynesburg, PA 15370