IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

HOWARD COOPER, )
 )
Plaintiff, ) 2:15-CV-00267-LPL
 )
vs. ) ECF NO. 61
 )
SGT. MARTUCCHI, OFFICER WALTER, )
DR. JIN, )
 )
Defendants,

MEMORANDUM OPINION

This case is before the Court on Defendant Jin's Motion for Summary Judgment filed on October 30, 2015. (ECF No. 61). Defendant has filed a Motion for Summary Judgment, concise Statement of Material Facts and a Brief in Support thereof. (ECF Nos. 61, 62, 63). On November 24, 2015, Plaintiff was ordered to file a Response to this Motion as well as a Motion filed by remaining Defendants on November 23, 2015. (ECF No. 72). Plaintiff filed a Response to the second filed Motion but not to this one. (ECF No. 78). On January 5, 2016, the Court, sua sponte, gave Plaintiff another opportunity to file a Response, with a deadline of January 19, 2016. (ECF No. 80). Crossing in the mail was a request by Plaintiff for a 90 day extension of time to respond. Because the pending motion was filed in October the Court granted Plaintiff an extension to January 29, 2016. (ECF No. 85). Another extension was requested by Plaintiff on January 29, 2016 and grated. Plaintiff's Response was now due February 29, 2016. (ECF Nos. 86 and 87). To date, no Response has been received so a ruling will be made without the benefit of a Response. For the reasons set forth below, the Motion for Summary Judgment will be granted.

**I.      FACTUAL BACKGROUND**

On or around February 23, 2015, *pro se* Plaintiff, Howard Cooper, initiated a civil action against various Defendants regarding an assault by another inmate and the medical care provided to him while he was an inmate incarcerated within the Pennsylvania Department of Corrections at S.C.I.-Greene. According to his Complaint, on December 1, 2014, Plaintiff overheard Inmate Mayo advise the Defendant Corrections Officers that he was a Z-Code (single cell housing restriction) and that he would kill anyone in a cell with him. (ECF No. 7, ¶ 7). Notwithstanding this threat, the Corrections Officers purportedly ordered Inmate Mayo into a cell with Plaintiff. (ECF No. 7, ¶ 8). Once in the cell, Inmate Mayo pulled a sock filled with batteries from his personal belongings and began to assault Plaintiff, hitting him with the battery-filled sock approximately 12 to 15 times on his head, hands, ribs, stomach, and legs. (ECF No. 7, ¶ 9-10).

Plaintiff now alleges that Defendant, Dr. Byunghak Jin, failed to adequately treat his injuries. Within his Complaint, Plaintiff acknowledges that he was seen in the infirmary immediately following the assault, where he was stabilized and given medication for pain. (ECF No. 7, ¶ 10). Additionally, the following day, an X-ray was taken of Plaintiff's ribs and hands. (ECF No. 7, ¶ 11). At that time, the X-ray technician (who is not a radiologist) purportedly advised Plaintiff that she believed his fingers and ribs were broken. (ECF No. 7, ¶ 11).

Notwithstanding this treatment, Plaintiff avers that Dr. Byunghak Jin violated his Eighth Amendment rights by falsifying medical records in order to minimize the gravity of Plaintiff's alleged injuries, stating:

> On December 3, 2014[,] Plaintiff was called to the Prison Infirmary to be seen by Defendant Dr. Jin. In an attempt to minimize Plaintiff's injuries, Defendant Dr. Jin fabricated Plaintiff's medical condition and records so that [it] would appear that Plaintiff had not suffered any broken fingers and ribs despite the X-ray technician's early findings. Plaintiff was only prescribe[d] Motrin [for] his pain

that offered him no relief. Due to the inaction by Defendant Dr. Jin, one of Plaintiff's finger[s] [is] disfigured.

(ECF No. 7 ¶12). Defendant Jin has provided, in support of his Summary Judgment Motion, 85 pages of medical records detailing the treatment that was provided to Plaintiff. Defendant Jin further argues that Plaintiff did not properly exhaust the grievance procedures.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence, or the lack thereof, which demonstrates the absence of a genuine issue of material fact. *Nat'l State Bank v. Fed. Reserve Bank of N.Y.*, 979 F.2d 1579, 1581-82 (3d Cir. 1992) (citing *Celotex,* 477 U.S. at 323-25). Once that burden has been met, the non-moving party may not rest on the allegations in the complaint, but must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324 (quoting FED. R. CIV. P. 56(e) (1963)). *See also Orsatti v. N.J. State Police,* 71 F.3d 480, 484 (3d Cir. 1995) ("plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case.") (citing *Celotex,* 477 U.S. 317).

An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* FED. R. CIV. P. 56(c)(2); *Celotex*, 477 U.S. at 324; *J.F. Feeser, Inc., v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990).

Where the non-moving party fails to respond to a summary judgment motion, that failure does not automatically result in the entry of summary judgment for the movant. *Douglas v. Brookville Area Sch. Dist.*, 836 F.Supp. 2d 329, 351 (W.D. Pa. 2011) (citing *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 171 (3d Cir. 1990)). Instead, where the non-moving party fails to properly address the moving party's assertions of fact as required by Rule 56(c), the court may give the non-moving party yet another opportunity to properly address the asserted facts or may consider the asserted facts undisputed, or the court may "grant summary judgment only if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to [judgment as a matter of law]." FED. R. CIV. P. 56(e)(1) - (3). *See Accord Cortez v. Ford*, No. 1:07-CV-1466, 2008 WL 4186906, at *1 (M.D. Pa. Sept. 5, 2008) (court deemed summary judgment motion unopposed where plaintiff failed to file an appropriate response despite being afforded the opportunity to respond and being advised that his failure to do so in a timely manner would result in the motion being deemed unopposed); *Robinson v. Velasquez*, No. 07-CV-3645 (KAM)(LB), 2010 WL 1010733, at *4 (E.D.N.Y. Mar. 15, 2010) (granting defendant's motion for summary judgment in §1983 action where *pro se* plaintiff failed to oppose it, despite receiving notice of the motion and supporting documents, including a notice identifying his obligations and repeated opportunity, through extensions of time, to respond, and court determined defendant was entitled to judgment as a matter of law).

## III. ANALYSIS

### A. Deliberate Indifference to Medical Needs

Plaintiff claims that Dr. Jin fabricated his medical records. However, he provides nothing to support this other than an averment that the X-ray technician informed Plaintiff that his ribs and fingers were broken. Defendant argues, and the records confirm, that Plaintiff's X-ray films were reviewed by a radiologist, William Betz, M.D., who found no evidence of any fracture or break. Defendant argues that this is not a case of deliberate indifference but simply a situation where the Plaintiff disagrees with the medical providers and their diagnosis. The assault complained of took place on December 1, 2014. The medical records indicate that Plaintiff was seen in the infirmary by Nurse Dice who noted a "small, superficial laceration" of the middle finger and red areas on both the left thigh and left ribs. Plaintiff's laceration was cleaned and his right middle and ring fingers were taped. Pain medication was offered but plaintiff initially refused. He did return to the infirmary an hour and a half later demanding to be taken to the hospital. This request was denied. Plaintiff returned to sick call the following morning and per the records was seen by Esther Mattes, a physician's assistant, who ordered an X-ray of the chest and fingers. As stated above, the X-ray, taken on December 3, showed no fracture or break. Plaintiff was then examined by Dr. Paul Dascani who advised him that the X-ray showed no fracture. (ECF No. 63-1 p. 35). He diagnosed the plaintiff with a sprained finger and prescribed 10 days of ibuprofen, rest and a splint. Plaintiff did not see Defendant Jin until December 19, 2014 (ECF No. 63-1 pp. 34, 35). Defendant argues and the record supports that from December 1, 2014, to the date the Motion for Summary Judgment was filed, Plaintiff was seen by the medical department on numerous occasions, examined and treated.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

In the context of medical treatment, an inmate must prove two elements: (1) that he was suffering from a "serious medical need," and (2) that prison officials were deliberately indifferent to the serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The first showing requires the court to objectively determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Monmouth Cty. Corr. Inst. Inmates v. Lanzara*, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).

The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993). A prisoner must demonstrate that the official acted with more than mere negligence. *Estelle*, 429 U.S. at 105; *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety. *Farmer*,

511 U.S. at 837. It is a "well-established rule that mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon,* 897 F.2d 103 (3d Cir. 1990). Moreover, "[a] court may not substitute its own judgment for diagnosis and treatment decisions made by prison medical staff members." *Inmates of Allegheny Cty. Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir. 1979).

First of all, it is not clear that Plaintiff had a serious medical injury. The medical records support that Plaintiff was X-rayed almost immediately after the altercation in question and no fractures were reported. His pain was treated with medication, splints, and rest. It is Plaintiff's belief that somehow all of the medical records, including the radiology reports, were fabricated. There is absolutely no support for this nor can such a baseless allegation be given credence. Plaintiff may disagree with the judgment of all of the medical professionals involved in his treatment however, the law is clear that that does not give rise to a claim under the Eighth Amendment. Therefore, plaintiff has failed to state a claim for deliberate indifference to his medical needs.

### B. Failure to Exhaust

Defendant argues that, although Plaintiff grieved his medical care, he failed to properly appeal them to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") as required by 42 U.S.C. §1997e. In his brief, Defendant meticulously outlines each of the grievances filed and explains why each does not satisfy the exhaustion requirement. His conclusion is that, although Plaintiff has filed numerous grievances on various issues, he did not appeal a single grievance against Dr. Jin and therefore is precluded from pursuing this action against him.

Through the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress amended 42 U.S.C. § 1997e(a) to prohibit prisoners from bringing an

action with respect to prison conditions pursuant to 42 U.S.C. § 1983 or any other federal law, until such administrative remedies as are available are exhausted. Specifically, the act provides, in pertinent part, as follows:

> No action shall be brought with respect to prison conditions under section 1983 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion is required under this provision regardless of the type of relief sought and the type of relief available through administrative procedures. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). In addition, the exhaustion requirement applies to all claims relating to prison life which do not implicate the duration of the prisoner's sentence, including those that involve general circumstances as well as particular episodes. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies prior to filing the action. *See Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").

The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id.* at 93 (quoting *Porter*, 534 U.S. at 525). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective . . .

appeal." *Id.* at 83; *see also Spruill v. Gillis*, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal courts. *See, e.g., Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008); *Jetter v. Beard*, 183 F. App'x 178 (3d Cir. 2006); *Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000).

This broad rule favoring full exhaustion admits of one narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000) (Section 1997e(a) only requires that prisoners exhaust such administrative remedies "as are available"). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Davis*, 49 F. App'x at 368; *see also Brown v. Croak*, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); *Camp*, 219 F.3d at 281 (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and correctional officers impeded filing of grievance).

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are

frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *Harris*, 149 F. App'x at 59. Nor can an inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to him. *Davis*, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. *Casey v. Smith*, 71 F. App'x 916 (3d Cir. 2003). Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed. *Oliver v. Moore*, 145 F. App'x 731 (3d Cir. 2005) (failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

No analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

1. Pennsylvania Department of Corrections Grievance Procedure

Within DC-ADM 804, the Inmate Grievance System Policy, the Pennsylvania Department of Corrections established a three-step Inmate Grievance System to provide inmates with an avenue to seek review of problems that may arise during the course of confinement. Pursuant to DC-ADM 804, after an attempt to resolve any problems informally, an inmate may

submit a written grievance to the facility's Grievance Coordinator for initial review. This must occur within fifteen days after the events upon which the claims are based. Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution.[1] Within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals. An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. *See Booth*, 206 F.3d at 293 n.2 (outlining Pennsylvania's grievance review process); *Ingram v. SCI Camp Hill*, No. 08-23, 2010 U.S. Dist. LEXIS 127124, at *21-25 (M.D. Pa. Dec. 1, 2010) (same).

Based upon the evidence before the Court, the conclusion is that Plaintiff failed to properly exhaust his grievances as to Defendant Jin and summary judgment should be granted on that basis as well. A separate Order will be entered.

DATED this 28th day of April, 2016.

BY THE COURT:

LISA PUPO LENIHAN
United States Magistrate Judge

CC: **HOWARD COOPER**
JT-3733
SCI Greene
175 Progress Drive
Waynesburg, PA 15370

---

[1] The policy was last amended on December 1, 2010. The previous version of the policy only allowed ten working days to appeal an adverse initial review decision to the Facility Manager.